STEVENS *v.* GARLAND.

1. MORTGAGES—PRIORITY—MECHANICS' LIENS—STATUTES.

The drawing of plans for a building is not the commencement thereof so as to give liens priority over a mortgage given to the contractor under 3 Comp. Laws, § 10718 (3 Comp. Laws 1915, § 14804), providing that liens "shall be preferred to all other titles, liens or incumbrances which may attach to or upon such building, machinery, structure or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said building or build-

ings, erection, structure or improvement," especially where a bond is given by the contractor of even date and like amount as the mortgage.

2. MECHANICS' LIENS—MORTGAGES—PRIORITY—PAYMENTS—PROTECTION OF OWNER—SWORN STATEMENTS.

Lienors are not required by a decree making a mortgage to the contractor in the hands of an assignee a prior lien where the money represented by such mortgage, through the payment of the surety on the contractor's bond guaranteeing the construction of the building according to the plans and specifications, pursuant to an order of court, has been expended by the owner in liquidating the cost of construction of the building, and it is immaterial that the owner failed to secure a sworn statement from the contractor before delivering to him the mortgage, no money being due or to become due to any contractor or materialman at the time said mortgage was delivered.

3. SAME.

Under 3 Comp. Laws, § 10713 (3 Comp. Laws 1915, § 14799), making payment by the owner to the contractor at his own risk where he fails to require a sworn statement of the names of subcontractors, etc., before making payment, the owner is not protected in payments made to the principal contractor, in the absence of a statement on oath by the contractor showing the names of the subcontractors, etc., and such payments are made at the risk of the owner, and do not discharge liens, unless distributed by the contractor among the subcontractors, materialmen, and laborers, or, if distributed in part only, then to the extent of such distribution.

4. SAME.

A sworn statement by a contractor of the names of subcontractors, etc., is a sufficient protection to the owner in making a payment to the contractor under 3 Comp. Laws, § 10713 (3 Comp. Laws 1915, § 14799), where it states that the "amounts due or to become due to such subcontractors, laborers, and persons for work done and materials furnished at the date hereof is correctly and fully set forth opposite their names respectively," such statement being obviously false.

5. SAME—EVIDENCE—SUFFICIENCY—WAIVER.

Evidence *held*, sufficient to show a waiver by the owners

of their right to insist upon the completion of a building contract by the contractor at the fixed date.

6. SAME—ASSIGNMENTS—BONDS.

The owners of a building are not injured by having a mortgage given to the contractor, and assigned by him to another, made a prior lien on the premises, although the contractor defaults, and the building is completed by the owners at increased expense, where the owners were secured for the amount of the mortgage by a bond entered into as a part of the same transaction, and the surety paid the bond.

Appeal from Wayne; Withey, J., presiding. Submitted April 10, 1917. (Docket No. 119.) Decided September 27, 1917. Rehearing denied June 20, 1918.

Bill by Frederic B. Stevens against Richard M. Garland, Sarah A. Garland, and the Webster & McCausey Lumber Company to foreclose a mechanic's lien. Defendant lumber company filed a cross-bill to enforce a lien. Defendants Garland filed a cross-bill making James S. Galvin, mortgagee, and the Maryland Casualty Company, surety on the contractor's bond, parties. From the decree entered, plaintiff, and defendants Garland and Webster & McCausey Lumber Company appeal. Reversed in part.

*Wilkinson, Routier & Hinkley* (*Clyde I. Webster,* of counsel), for plaintiff and defendant lumber company.

*Orla B. Taylor* and *Charles F. Delbridge,* for defendants Garland.

*Ralph L. Aldrich,* for defendant Galvin.

Plaintiff filed a bill for the purpose of foreclosing a mechanic's lien upon a structure owned by the defendants Garland. Defendant and cross-plaintiff Webster & McCausey Lumber Company seek in the proceeding the foreclosure of their lien for lumber furnished in the construction of said building. The defendants

Garland, being the owners of a certain lot, on August 1, 1914, entered into a contract with the Greenwich Company for the erection of a duplex dwelling on said lot to cost $7,400, payable as follows:

| | |
|---|---:|
| First payment, on the execution of this contract a first mortgage upon the above described premises for three years, 6% | $4,400 00 |
| Second payment, when the foundations are in | 1,000 00 |
| Third payment, when the building is ready for roof | 1,000 00 |
| Fourth payment, when the plumbing, steam and electric roughing are in and the building ready for lath and plaster | 1,000 00 |
| Total | $7,400 00 |

To protect the owners in the giving of the $4,400 mortgage, the Greenwich Company, according to the terms of the contract, was required to and did give to the owners a surety company bond in the sum of $4,400 for the purpose of guaranteeing the erection of said building by the Greenwich Company according to the plans and specifications which were made a part of the contract. By the terms of said contract the building was to be completed on the 15th day of November, 1914. On the same day the contract was executed the Greenwich Company caused to be delivered to the defendants Garland the bond of the Maryland Casualty Company in the sum of $4,400 in accordance with the terms of the contract, and on the 4th day of August, three days later, the defendants Garland executed and delivered to the Greenwich Company a mortgage on the premises for a like amount. This mortgage was recorded on the same day. On October 24, 1914, the Greenwich Company for a valuable consideration assigned this mortgage to James S. Galvin. Galvin in purchasing the mortgage knew of the outstanding contract between the defendants Garland and the Greenwich Company, and of the existence of the bond of the Maryland Casualty

Company guaranteeing to the extent of $4,400 the execution of said contract. On September 10th the defendants Garland paid to the Greenwich Company $1,000 without securing from said company the sworn statement required by the statute, and on November 11th they made a third payment to the Greenwich Company in the amount of $1,042, $42 representing certain extras. At that time a sworn statement was secured from the contractors in the following terms:

"Horace E. Hartwell, being duly sworn, deposes and says that he is the president of the Greenwich Company, the original contractor for the erection of the building situated on the following described property, viz.: Known as No. 89 Alexandrine avenue east, Detroit, Michigan. That the following is a statement of the number and names of every subcontractor and laborer in the employ of the Greenwich Company in connection with said building and of every person furnishing materials therefor; that the amounts due or to become due to such subcontractors, laborers, and persons for work done and materials furnished at the date hereof is correctly and fully set forth opposite their names, respectively, in said statement, to wit:

| No. | Name. | Labor or Materials. | Amount. |
| --- | --- | --- | --- |
| 1. | Frank Vettes ......... | Excavations | Nothing due |
| 2. | B. C. Hughes ......... | Mason | " |
| 3. | Webster, McCausey Co.. | Materials | " |
| 4. | Builders' & Pavers' Co.. | " | " |
| 5. | Amos & Co. ........... | Iron | " |
| 6. | Solomon & Birkowitz... | Labor | " |
| 7. | F. W. Stevens Co...... | Material | " |
| 8. | The Greenwich Co...... | Carpenters | " |
| 9. | " | Masons | " |
| 10. | " | Laborers | " |
| 11. | Detroit Cut Stone Co... | Limestone | " |
| 12. | A. Rohns Co.......... | Steel | " |

"Deponent further says that the Greenwich Company has not employed, or procured material from, or subcontracted with any person or persons other than

those above mentioned, and owes no moneys for labor upon or material for the building of said house other than the sums above set forth."

This last payment was made within four days of the date fixed by the original contract for the completion of the structure, which had then reached a point nowhere near completion. In the early part of December the Greenwich Company, contractors, became financially embarrassed, and abandoned the contract. The defendants Garland then took over the work and finished it, but the building was not finally completed until September 15, 1915. The expense of completion after it was taken over by the defendants Garland amounted to $5,175.50. The lien of plaintiff, Stevens, amounts to $398; that of defendant and cross-plaintiff Webster & McCausey Lumber Company to $831.48. By the cross-bill filed by defendants Garland the Maryland Casualty Company and James S. Galvin were made parties, both of whom filed answers. By the terms of the final decree entered in the court below the Maryland Casualty Company was condemned to pay the defendants Garland the sum of $4,400, with interest thereon in accordance with the terms of the bond given by it guaranteeing the performance of the Greenwich Company's contract. No appeal has been taken from that decree by the Maryland Casualty Company, and the $4,400 and interest has been paid. By the further terms of the decree entered it was adjudged that the defendants Garland were entitled to an allowance of $400 as rental for the failure of the Greenwich Company to complete the contract within the time limited therein. It was further decreed that the plaintiff and cross-plaintiff Webster & McCausey Lumber Company had properly prosecuted their claims of lien in the sums above set forth. The court in the decree stated the account as follows:

Debits.

| | | |
|---|---:|---:|
| Amount of contract ............. | $7,400 00 | |
| Extras ........................ | 179 00 | |
| Total ...................... | $7,579 00 | $7,579 00 |

Credits.

| | | |
|---|---:|---:|
| August 4, 1914, by mortgage...... | $4,400 00 | |
| September 10, 1914, by check..... | 1,000 00 | |
| November 11, 1914, by check..... | 1,042 00 | |
| Credit by omission of girder...... | 16 00 | |
| Credit by accrued interest on mortgage prior to time of fourth payment .......................... | 264 00 | |
| Damages for delay in completion.. | 400 00 | |
| Penalty for failure to furnish sworn statement ............... | 100 00 | |
| Cost to complete the building....: | 5,175 50 | 12,397 50 |
| | | $4,818 50 |

—and found that the mortgage in the hands of Galvin was a subsisting lien, that the two payments of September 10th, and November 11th, amounting to $2,042, were protected, and finally:

"(2) That there is no sum whatever due from the defendants and cross-complainants Richard M. Garland and Sarah A. Garland, the owners of said premises, to said the Greenwich Company, the original contractor, because of any sums that they contracted to pay such original contractor, and that all payments made by the defendants Richard M. Garland and Sarah A. Garland to the defendant the Greenwich Company on account of said contract were made in conformity to the statute, and said defendants Richard M. Garland and Sarah A. Garland are entitled to full credit therefor as against lien claimants and to full protection thereon under the statute.

"(b) Neither the complainants nor any of the defendants or cross-complainants have any lien or liens upon said premises, and each and every of the respective liens or claims of lien heretofore filed against said premises by said complainant and defendants, and each and every of them, are hereby discharged and decreed to be of no further force or effect, charge, or

incumbrance upon or against said premises, and said premises are hereby decreed to be free and clear of and from any such claim of lien. * * *

"(e) The following lien claimants have in all respects conformed with the requirements of the statute for the filing and proving of their claims, but the owners of the premises being in no way indebted to the original contractor for any amount which they contracted to pay the original contractor, including extras furnished or performed by the contractor pursuant to said contract, said claims of lien are hereby disallowed against said premises, to wit:

Frederick B. Stevens.........................$398.00
George Nunn .................................. 108.88
Park & McKay ................................ 46.80
Webster & McCausey Lumber Company......... 831.48"

From the decree so entered, plaintiff, and cross-plaintiff Webster & McCausey Lumber Company, as well as defendants Garland, appeal.

BROOKE, J. (*after stating the facts*). We will first consider the appeal taken on behalf of the plaintiff and defendant Webster & McCausey Lumber Company. Their contentions are grouped under the following heads:

"*First.* That the liens take priority over the mortgage given to the Greenwich Company, and later assigned to defendant James S. Galvin.

"*Second.* That the owners did not make such payments as entitled them to protection. The first payment is not protected, payment being made September 10th, without securing a sworn statement, and the second payment of November 11th, although made on the strength of Exhibit 40, is not protected, for the reason that the sworn statement secured does not comply with the statute. Section 13769, 5 How. Stat. (2d Ed.), 3 Comp. Laws 1915, § 14799.

"*Third.* That the plaintiff and defendant Webster & McCausey Lumber Company should be decreed to have a lien against the premises for the amount due, and

that the said liens should take priority over the mortgage.

"*Fourth.* That the defendants Garland are not entitled to damages reimbursing them for loss of rents, for the reason that the time limit was a physical impossibility, and, further, for the reason that no forfeiture was ever declared or insisted upon.

"*Fifth.* Commencement of the building is the first work done, viz., the drawing of the plans and specifications, which in the present case was confessedly prior to the execution of the mortgage."

The first and fifth propositions may be considered together. The claim stated in the fifth proposition that the liens should take priority of the mortgage, because before the mortgage had been given the plans and specifications had been drawn, is not tenable. Subdivision 3 of section 13774, 5 How. Stat. (2d Ed.), 3 Comp. Laws 1915, § 14804:

"They [liens] shall be preferred to all other titles, liens or incumbrances which may attach to or upon such building, machinery, structure or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the·commencement of said building or buildings, erection, structure or improvement."

It is, we think, clear, that the drawing of plans for a building is not "the commencement of said building or buildings." Under the first head the contention is made that the liens of appellants are superior to the mortgage lien because the mortgage was given to the contractor. Upon this point appellant cites 27 Cyc. p. 241, and *Bassett* v. *Menage,* 52 Minn. 121 (53 N. W. 1064), asserting that in the hands of the Greenwich Company, the mortgagee, the mortgage would be inferior as a lien to liens of appellants. They claim that it is likewise so inferior in the hands of James S. Galvin, to whom it was assigned on October 24th, something over two months after the commencement of the building.

We are of opinion that the whole question of the mortgage is disposed of by a consideration of the following matters: The defendants Garland, owners of the lot, would not have given the mortgage for $4,400 to the Greenwich Company without the protection of the Maryland Casualty Company bond of even date and like amount. The record conclusively shows that Galvin, as assignee of said mortgage, would not have purchased the same but for his knowledge of the existence of said bond. It further appears that the decree of the court below directing the payment by the casualty company to the defendants Garland of the said $4,400 and interest thereon has been satisfied, so that, so far as the appellant lienors are concerned, we are unable to see how in the final analysis they are injured by the decree of the court holding said mortgage a subsisting lien superior to their own. The mortgage was given by the owners, and eventually the money represented by said mortgage, through the payment by the bonding company of the penalty named in the bond, has reached the hands of the owners, and presumably has been expended by them in liquidating the cost of the building, the purpose to which the fund was to be devoted when placed in the hands of the original contractor; nor do we think that the failure of the owner to secure a sworn statement from the contractor before delivering to him said mortgage is a matter of consequence. At the time said mortgage was delivered no money was due or to become due to any contractor or materialman. For his own protection the contractor or materialman should have advised himself of the terms of the contract between the Greenwich Company and the defendants Garland, and, being so advised, he would have known that the Greenwich Company had become possessed of the $4,400 on account of the contract price. The mortgage was of record, and every contractor and materialman deal-

ing with the original contractor had constructive notice of its terms.

It is undisputed upon this record that the payment made by defendants Garland on September 10, 1914, was made without securing from the principal contractor the sworn statement required by section 13769, 5 How. Stat. (2d Ed.), 3 Comp. Laws 1915, § 14799, which provides in a note thereto:

"Payment by owner without requiring statement is at his own risk."

This section was under consideration by this court in the case of *Fairbairn* v. *Moody*, 116 Mich. 61 (74 N. W. 386, 75 N. W. 469), where it is said:

"It is claimed that, as the full contract price was paid, and all distributed for labor and materials, there can be no further lien; but under section 1 of the mechanic's lien law (Act No. 179, Pub. Acts 1891, as amended by Act No. 199, Pub. Acts 1893) the owner is not protected in payments made to the principal contractor, in the absence of a statement on oath by the contractor, showing the names of the subcontractors, etc., and such payments are made at the risk of such owner, and do not discharge the lien, unless distributed by the contractor among the subcontractors, materialmen, and laborers, 'or, if distributed in part only, then to the extent of such distribution.'"

Again in *Smalley* v. *Gearing*, 121 Mich. 190 (79 N. W. 1114, 80 N. W. 797), the court said:

"This provision points out the way in which the owner may safely make payments; that is, he need incur no risk: *First*, if he refuses payment until he is provided with a sworn statement of the contractor, and complies with it; *second*, if the money paid is distributed, in accordance with the statute, among those who might acquire liens, even though he makes payments without the sworn statement. The owner is not required to make payments beyond the amount called for in the contract."

It is, we think, clear, that as to the payment of

$1,000 made on September 10, 1914, defendants Garland are without protection. Touching the payment of November 11th, which was made upon the sworn statement of the principal contractor, of the same date, it is the contention of appellant lienors that it does not comply with the statute because it contains no reference to the amounts *to become* due the materialmen or laborers. The record discloses that plaintiff's first delivery was made on November 2d, and the last on November 17th, and that the Webster & McCausey Lumber Company's first delivery was made on September 2d, and the last on December 11th, so that on November 11th, when the sworn statement was given by the principal contractor, much material had been delivered at the premises, and at some time in the future compensation therefor would "become due." The sworn statement is obviously false, if it means, as defendants Garland contend that it does mean, that no amount was either due or to become due to any of the contractors or materialmen named in the statement. It is such a statement as should have aroused the suspicion of any owner who was conversant with the progress of the work as the defendants Garland were, but we are not prepared to say that it was not a sufficient protection under the statute, in view of the fact that it contains the following language:

"That the amounts due or to become due to such subcontractors, laborers, and persons for work done and materials furnished at the date hereof is correctly and fully set forth opposite their names, respectively, in said statement, to wit."

Defendants Garland claimed a large sum for loss of rent by reason of the failure of the Greenwich Company to complete the contract on November 15, 1914, and they were allowed by the court below the sum of $400 on this account. We are of opinion that this claim on behalf of said defendants is not well founded.

The defendants waived the right to insist upon the completion of the building within the contract time. This waiver is shown by the fact that four days before the time fixed for completion defendants paid to the Greenwich Company upwards of $1,000 upon the contract, at a time when the building was without roof, the partitions incomplete, and at a time when, according to defendant Garland's testimony, he was absolutely confident the building could not be completed by November 15th. He further testified that the Greenwich Company commenced the erection of the building upon August 20th, and continued until December 12th, nearly a month later than the date fixed by the contract, and when they abandoned it it was so far from completion that it cost defendants upwards of $5,000 to finish it. Under these circumstances we are disposed to the view that defendants Garland waived their right to insist upon the completion of the contract on the stipulated date. *Kotcher* v. *Perrin,* 149 Mich. 690 (113 N. W. 284).

We now come to a consideration of the claim of defendants and appellants Garland. The principal claim of these appellants is that the mortgage should be held void in the hands of Galvin. What we have said with reference to this mortgage heretofore in connection with the claims of the lienors is pertinent here, but to that may be added the following observation: Through their foresight the defendants Garland, when they gave the mortgage, secured the bond of the Maryland Casualty Company for an equal amount and of even date with the mortgage, conditioned upon the faithful performance of the contract by the Greenwich Company. The Greenwich Company failed to perform, and the bonding company has responded in the full penalty of the bond. The defendants Garland therefore are not injured so far as the mortgage is concerned. They gave the mortgage to the Greenwich Company, and through

the bonding company have received full consideration therefor, together with interest thereon. It is and should be a subsisting lien against the property; otherwise the money paid to them by the bonding company would be without consideration from them. The giving of the mortgage and bond were one transaction, and as the penalty of the bond has been exacted from the bonding company, it would be highly inequitable to permit them to avoid the payment of the mortgage. The decree of the court below upon this point is therefore affirmed.

The statute (3 Comp. Laws, § 10710, 3 Comp. Laws 1915, § 14796), provides:

"The owner * * * shall not be liable to the * * * materialmen * * * for any greater amount than he contracted to pay the original contractor, and shall be entitled to recoup any damages which he shall sustain by reason of any failure or omission in the performance of such contract."

The original contract price was $7,400. To this should be added the amount of the conceded extras, $179, so that we have a total contract price of $7,579. Let us see what the defendants Garland have paid, and in making this computation the $4,400 represented by the mortgage will be entirely disregarded because they have received that sum back with interest thereon from the bonding company. They have paid to complete the building, $5,175; they have paid on November 11th, $1,042; credit by omission of girder, $16— or a total of $6,233.

This sum deducted from the contract price, plus extras, $7,579, leaves a balance of $1,346. Referring to the statement of account contained in the decree and hereinbefore set forth, the first credit item of $4,-400 is disallowed for the reasons stated. The second item of $1,000 is disallowed because not protected by the owners procuring a sworn statement before payment. The third item of $1,042 is allowed. The fourth

item of $16 is allowed. The fifth item of $264 is disallowed because defendants Garland received from the Greenwich Company not only the $4,400 represented by the mortgage, but interest thereon. The sixth item of $400 for lost rent is disallowed for the reason stated herein. The seventh item, the penalty of $100, is disallowed as between the owners and the lienors. The eighth item of $5,175.50 is allowed. The result of these conclusions is that the decree of the court below is reversed in part. Inasmuch as the sum now in the hands of the owners is in excess of the amount found to be due to the lienors, a decree will be entered in this court fixing said liens upon said property, subject, however, to the mortgage for $4,400.

Plaintiffs will recover costs against defendants Garland.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.