Chief Justice DURRANT,
concurring in the result:
39 We are asked to determine what elements must be included in a document in order for it to qualify as a valid "waiver and release" under the Mechanics' Lien Act. In answering this question, the majority looks outside the Act to the common-law "term-of-art understanding of the elements of a 'waiver. " [1] I would instead look to the Act itself, specifically to those elements the legislature has identified through examples set forth in the Act as meeting the requirements of a valid waiver and release.[2]
*758 40 The majority rests its adoption of the term-of-art meaning of "waiver" on the ground that the legislature's definition of the term is circular: "In cireularly conditioning the effectiveness of a 'waiver' on the execution of a 'waiver, the legislature appears to have embraced a 'term of art with a widely shared meaning." [3] But the definition is circular only if it is assumed that the exclusive guidance provided by the legislature as to its intended meaning of "waiver and release" is found in subsection (2) of section 38-1-89. That is not the case, however. In fact, in subsection (4)(a) the legislature has set forth in some detail those elements that meet the requirements of section 38-1-89: "A waiver and release given by a lien claimant meets the requirements of this section if it is in substantially the form provided in this Subsection (4) for the cireamstance provided in this Subsection (4)." The cireumstances provided are a "waiver and release upon progress payment," a "waiver and release upon final payment," and a "restrictive endorsement placed on a check."
€ 41 The majority concludes that the example set forth in subsection (4)(d) (restrictive endorsement on a check) is mandatory, but designates the examples set forth in subsections (4)(b) (conditional waiver and release upon progress payments) and (4)(c) as mere safe harbors: I agree that the language in subsection (2) supports this distinction. But the fact that the (4)(b) and (c) examples qualify as safe harbors should not make them altogether irrelevant to our analysis of what elements the legislature intended a waiver and release should include in order to qualify as valid in the unique context of the Mechanics Lien Act. After all, the legislature did explicitly designate each of the three examples (or documents in substantially the same form) as a waiver and release that "meets the requirements of this section." [4]
142 I would not, as does the majority, effectively deem the (4)(b) and (c) examples irrelevant and simply default to the garden variety definition of waiver. At minimum, it seems to me, these examples suggest that the legislature intended more in the unique mechanic's lien context. This is consistent with the historical fact that a mechanic's lien could not be waived at all until the Act was amended in 2007.[5]
43 In justifying its decision to look outside the statute for the definition of "waiver and release," the majority relies on our recent decision in Hughes General Contractors, Inc. v. Utah Labor Commission.[6] In that case, we were called upon to interpret the term "employer," which was essentially defined as, "one who engages employees." [7] And because the term "employee" was in turn defined as "any person suffered or permitted to work by an employer," [8] we concluded that the statute was cireular and looked to the "legal term-of-art understanding" of the term "employer." [9] But that approach was appropriate only because the statute provided no other indication of what the legislature meant by the term "employer."
{44 This point is well illustrated by the United States Supreme Court opinion, Nationwide Mutual Insurance Co. v. Darden,[10] which we relied upon in Hughes. At issue in Darden was a cireumstance almost identical to the one presented in Hughes The Employee Retirement Income Security Act defined "employee" in a cireular manner, and the Court was asked to interpret the term. As we did in Hughes, the Darden Court resorted to a definition that relied upon the *759 common law.[11] But it did so only because "[the respondent] [did] not cite, and [the Court] [did] not find, any provision either giving specific guidance to the term's meaning or suggesting that construing it to incorporate traditional agency law principles would thwart the congressional design." [12]
45 Here, we need look no further than subsection (4) to find specific guidance on the meaning of the terms "waiver and release." In my view, that the examples in subsections (4)(b) and (c) qualify as safe harbors does not give us license to wholly ignore them in assessing the legislature's intended meaning of the terms "waiver and release" as used in the Act. We should look to the full text of a statute for guidance as to the legislature's intended meaning before defaulting to a common-law term of art.
¶ 46 Accordingly, I believe an analysis of the legislature's intended definition of "waiver and release" in the unique context of the Mechanics' Lien Act should be guided by the detailed examples the legislature has provided of documents that meet the requirements of the waiver section of the Act. I would therefore look to all of the section and, in a way similar to what the court of appeals did below, tailor a definition of "waiver and release" that gives deference to these examples.
1 47 Finally, whether we were to apply the common-law meaning of waiver as proposed by the majority or the meaning of waiver and release as I believe it to be augmented by the legislative examples, it is clear that there are factual issues that preclude summary judgment. Accordingly, I concur in the result.
Justice DURHAM,
concurring in the result:
1 48 I agree with the majority's interpretation of Utah Code section 88-1-89 (2010). I also agree that the district court erred when it granted summary judgment in favor of the Kykers and National City (collectively, Na: tional City). But I disagree with the majority's holding that a dispute of material fact precludes summary judgment. Instead, I would hold that the summary judgment motion at issue in this case squarely presented the legal question of whether the language of the draw request constituted a waiver of Lane Myers's statutory right to a mechanies' Hen. In my view, the draw request does not waive Lane Myers's right to file a lien, and I would reverse the district court's order granting summary judgment on this legal ground.
I. WAIVER IS A QUESTION OF LAW IN THIS CASE
T 49 Depending on the arguments made by the party asserting the doctrine, waiver may be either a question of law or a mixed question of law and fact. If a party asserts that a known right has been implicitly waived through a course of conduct, waiver is a fact-intensive mixed question. United Park City Mines Co. v. Stichting Mayflower Mountain Fonds, 2006 UT 35, ¶¶ 21, 25, 140 P.3d 1200; Chen v. Stewart, 2004 UT 82, ¶¶ 20, 23, 100 P.3d 1177. However, if a waiver claim is based upon a writing, and no extrinsic evidence of the meaning of ambiguous terms is presented, waiver is a question of law that may be resolved on summary judgment. See Zions First Nat'l Bank v. Saxton, 27 Utah 2d 76, 493 P.2d 602, 603 (1972); Holbrook v. Webster's Inc., 7 Utah 2d 148, 320 P.2d 661, 663 (1958); see also Kimball v. Campbell, 699 P.2d 714, 716 (Utah 1985) (absent extrinsic evidence, the interpretation of a contract is a question of law).
1 50 Although it may be theoretically possible for a party to assert that both a written document and a course of conduct contributed to the waiver of a right, that is not the case here. National City's motion for summary judgment was based solely upon its assertion that the language in the draw request waived Lane Myers's right to a lien. National City also disclaimed any reliance on extrinsic evidence, and argued that Lane Myers's waiver was "clear from the terms contained within [the draw request's] four corners." Consistent with this argument, the district court ruled that the draw request *760 constituted a waiver. Because National City understandably chose to assert a purely legal ground for summary judgment, and because the district court granted summary judgment based upon its interpretation of the draw request, the legal question presented on appeal is whether the language of the draw request, in fact, waives Lane Myers's lien rights.
{51 Indeed, in the context of mechanics' liens, all waivers of lien rights must be written. The mechanics' lien statutes in effect at the time Lane Myers signed the last draw request stated: "The applicability of the provisions of this chapter, including the waiver of rights or privileges granted under this chapter, may not be varied by agreement." Utah Code § 38-1-29 (2007).[1] In other words, the specific waiver provision of the mechanies' lien statute provided the exclusive means of waiving lien rights, and the parties could not agree to modify these requirements. This waiver provision stated that "[nljotwithstanding Section 88-1-29, a written consent given by a lien claimant that waives or limits the lien claimant's lien rights is enforceable." Uramx Cope § 88-1-39(2) (2007) (emphasis added).[2] By statute, therefore, it was not possible to waive the right to a mechanics' lien through conduct or verbal statements-only a written waiver would suffice.
T 52 Therefore, I disagree with the majority's conclusion that the issue of waiver may not be disposed of as a matter of law. Supra 129. Although a claim of implicit waiver through a course of conduct, as well as the use of extrinsic evidence to determine the meaning of a written document, involve fact-intensive inquiries that may very well lead to disputes of material fact precluding summary judgment, these types of claims are not relevant here. The dispositive issue in this case is whether the language of the draw request constitutes a valid written waiver of Lane Myers's lien rights as required by statute. Because this is a purely legal question, this court should resolve it.
II. THE DRAW REQUEST LANGUAGE DOES NOT WAIVE LANE MYERSS LIEN RIGHTS
€53 The draw request National City required Lane Myers to sign before the final disbursement of funds contained a declaration that "no liens or claims that may result in lens exist against the, above-described property" at issue in this appeal. This is not a waiver of Lane Myers's lien rights. Unlike language we have previously held adequate to waive mechanies' len rights,[3] the draw request does not proclaim Lane Myers's statutory right to file a mechanies' lien had been waived or relinquished. Instead, this language makes an assertion of fact: that Lane Myers had no liens or claims that could result in liens against the property when the draw request was signed. Regardless of whether this declaration of fact is deemed true or false, it does not purport to waive Lane Myers's lien rights.
I 54 Therefore, I agree with the majority's conclusion that the draw request is insufficient to establish an enforceable waiver. Su-pro 188. But I would reverse summary judgment on this legal ground as it was the only theory of waiver presented to the district court-and, indeed, the only theory permitted in the context of mechanies' liens.
*761 Associate Chief Justice NEHRING,
concurring in the result:
1 55 I concur in the result reached by all of my colleagues: summary judgment must be reversed. However, I agree with Chief Justice Durrant's reasoning concerning the relevance of the forms contained in Utah Code section 38-1-39(4). Like the Chief Justice, I would not "effectively deem the 4(b) and (c) examples irrelevant and simply default to the garden variety definition of waiver." [1] Thus, I concur with the Chief Justice's reasoning. However, like Justice Durham, I believe that there is no need for further development of the facts concerning the existence of a valid waiver. I agree with Justice Durham that the grant of summary judgment on behalf of the Kykers should be reversed and the summary judgment motion denied on the basis that the draw request does not establish an enforceable waiver.

. Supra ¶ 3.

. This is the approach we recently took in America West Bank Members, L.C. v. State when, "for guidance," we turned to the model forms contained in the Utah Rules of Civil Procedure to interpret the "short and plain statement" requirement for breach of contract claims. 2014 UT 49, ¶ 17, 342 P.3d 224 (internal quotation marks omitted). And we took that approach despite the introductory statement in the model forms, which states that "[the following forms are intended for illustration only." R. Civ. P., Appendix of Forms, Introductory Statement. Here the case for using the forms as guidance is much stronger because there is no such qualifier and the forms are in the text of the statute itself. While it is true that our role in interpreting our own rules is somewhat different than our role in interpreting a statute, I think that in either case there is wisdom in using model forms "[als exemplars" to guide the court in understanding the *758 scope of an otherwise unclear legal standard. See Am. West Bank Members, L.C., 2014 UT 49, ¶ 17, 342 P.3d 224.

. Supra 130.

. Cope § 38-1-39(4)(a) (2010).

. Before the amendment, a contractor's lien rights could not in any way be "varied by agreement." Id. § 38-1-29 (2006).

. 2014 UT 3, ¶¶ 12-15, 322 P.3d 712.

. Id.113.

. Id. {internal quotation marks omitted).

. Id.115.

. 503 U.S, 318, 323, 112 S.Ct. 117 1344, L.Ed.2d 581 (1992).

. Id.

. Id.

. The current version of this statute may be found at Utah Code section 38-1a-105.

. This waiver statute has been renumbered as Utah Code section 38-1 a-802.

. See Zions First Nat'l Bank v. Saxton, 27 Utah 2d 76, 493 P.2d 602, 603 (1972) ('the payee upon endorsement hereby waives and releases all lien [sic] or right of lien now existing or that may hereafter arise for work or labor performed or materials furnished" (internal quotation marks omitted)); Brimwood Homes, Inc. v. Knudsen Builders Supply Co., 14 Utah 2d 419, 385 P.2d 982, 983 (1963) ("the undersigned hereby waives, releases and discharges any lien or right to lien the undersigned has or may hereafter acquire against said real property" (internal quotation marks omitted)); Holbrook v. Webster's Inc., 7 Utah 2d 148, 320 P.2d 661, 663 (1958) (same); see also Neiderhauser Builders & Dev. Corp. v. Campbell, 824 P.2d 1193, 1194 (Utah Ct.App.1992) ("'the payee ... waives[,] releases and relinquishes all right of ein {[sic] or claims payee now has to date upon the premises" (second and third alterations in original) (internal quotation marks omitted)).

. Supra % 42.